United States District Court
Southern District of Texas

**ENTERED**

March 20, 2017

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SYED A. HAIDER-RIZVI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-3405 |
| | § | |
| HARRIS COUNTY TOLL ROAD | § | |
| AUTHORITY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Syed Haider-Rizvi worked as a toll-plaza supervisor for the Harris County Toll Road Authority. The Authority demoted and then fired him. Haider-Rizvi sued, claiming employment discrimination, retaliation, and hostile work environment. Haider-Rizvi stipulated to the dismissal of all defendants except Harris County. (Docket Entry No. 35). After discovery, Harris County moved for summary judgment, Haider-Rizvi responded, and Harris County replied. (Docket Entries No. 42, 43, 44). Based on the briefs, the summary judgment record, and the applicable law, the court grants the County's motion for summary judgment and enters final judgment by separate order. The reasons are explained in detail below.

## I.    Background

The undisputed summary judgment evidence shows the following. Haider-Rizvi is Pakistani. The Authority hired him as a toll collector in January 2009. (Docket Entry No. 42-2). In October 2010, it promoted Haider-Rizvi to a plaza supervisor position. A series of altercations between Hiader-Rizvi and other toll-plaza employees persisted through his employment.

Haider-Rizvi made many written complaints to the Authority's human-resources office about

1

unfair, improper, or discriminatory treatment by his coworkers, subordinates, and supervisors, as well as employees from other Harris County offices.  (Docket Entries No. 43-4; 43-5; 43-11; 43-12; 43-14).  Notably, Haider-Rizvi claimed that a Harris County deputy constable referred to him as "Taliban" or a "terrorist" and joked about him bringing a bomb to work.  (Docket Entries No. 43-5; 43-11).  Haider-Rizvi, in turn, was the subject of many complaints by his subordinates and others. Between January and April of 2013, toll collectors Deondra Locks, Lidia Reeves, and Jessica Young filed written complaints about Haider-Rizvi, claiming that he had verbally abused them by speaking disrespectfully to them or shouting at them.  (Docket Entries No. 42-5; 42-7; 42-9).  As a result of those and other complaints, plaza manager Jim Evans verbally reprimanded Haider-Rizvi on April 23, 2013.   The memo memorializing the reprimand stated that it was for Haider-Rizvi's "[d]iscourteous and abusive treatment" of toll-plaza staff.   (Docket Entry No. 42-4).   The memorandum also stated that Haider-Rizvi's "unprofessional behavior" had "been discussed with [him] at length on more tha[n] one occasion" and warned him that "future issues in this area may lead to . . . demotion or termination."  (*Id.*).

The reprimand did not end the complaints about Haider-Rizvi's behavior.   Between September and December of 2013, another series of disputes resulted in written complaints from other employees, including those he supervised.  Toll collector Diana Palacios accused Haider-Rizvi of verbally abusing her and using profanity.  (Docket Entry No. 42-9).  Lane supervisor Larry Lawson claimed that Haider-Rizvi had accused him of lying about taking family medical leave to care for his elderly mother.   In the course of that conversation, according to Lawson, Haider-Rizvi became so upset that he appeared "beside himself."  (Docket Entry No. 42-12).  Toll collector Rosa Hernandez complained that Haider-Rizvi became angry at her when she refused to work overtime

2

due to childcare obligations, and that his supervisory style made her nervous and worried.  (Docket Entry No. 42-13).  Plaza manager James Evans wrote a memo to operations manager Cathy Hazzard-Williams, stating that when he tried to counsel Haider-Rizvi about these and other incidents, Haider-Rizvi became agitated and loud, then walked out of the meeting.  (Docket Entry No. 42-10).  In the memo, Evans stated that Haider-Rizvi was not suited for a supervisory position.  (*Id.*).  As a result of these and other complaints, Clay Cossey, the Authority's assistant director of human resources, issued Haider-Rizvi a "Written Reprimand In Lieu of Suspension" on February 24, 2014.  (Docket Entry No. 20).  The letter stated that even after Haider-Rizvi had received a formal verbal reprimand, his conduct toward coworkers and subordinates had not improved.  (*Id.*).  The letter noted that coworkers and subordinates continued to complain about how Haider-Rizvi treated them.  The letter reminded Haider-Rizvi of the Authority's policies against profanity, harassment, and abuse.  (*Id.*).  The letter notified Haider-Rizvi that he would be on disciplinary probation for 12 months and warned that any deviation from the Authority's policies on professionalism could result in his termination.  (*Id.*).

Between May and October 2014, toll plaza workers continued to complain about Haider-Rizvi's behavior.  Toll collector Brian Oyeama complained that Haider-Rizvi shouted at him when he asked for $100 in change from the plaza cash office.  (Docket Entry No. 42-22).  Toll collector Nicole Ginikanwa complained that Haider-Rizvi spoke rudely to her on a regular basis.  (Docket Entry No. 42-33).  Dean Smith, a technician working at the toll plaza, complained that Haider-Rizvi "told [him] off" and threatened to generate a service call right before the end of Smith's shift.  (Docket Entry No. 42-24).  On October 17, 2014, plaza manager James Evans sent personnel manager Donna Riske a "Demotion Request" letter outlining these and other complaints about

3

Haider-Rizvi and asking that he be demoted to a toll-collector job and transferred to another toll plaza. (Docket Entry No. 42-21). On December 5, 2014, Clay Cossey, the Authority's assistant director of human resources, informed Haider-Rizvi by letter that he was demoted to toll collector and transferred him to a different toll plaza, based on the continued complaints about his behavior. (Docket Entry No. 26).

Haider-Rizvi worked as a toll collector at a different plaza until April 2015. On April 21, 2015, Haider-Rizvi called into work to inform his supervisors that he would miss his shift because his wife was sick. Plaza manager Qemoni Stewart called Haider-Rizvi back to ask the reason for his absence. (Docket Entries No. 42-27; 42-28; 43-12). Two days later, Stewart issued Haider-Rizvi a written reprimand, stating that he had been hostile and abusive during that phone call. (Docket Entry No. 42-27). On April 27, 2015, Cheryl Pinson, a lane supervisor at the toll plaza, filed a complaint against Haider-Rizvi. The complaint stated that Stewart had asked her to be present as a witness when he gave Haider-Rizvi the reprimand, and that Haider-Rizvi had become angry, yelled, and used profanity. (Docket Entry No. 42-30).

Stewart wrote to Donna Riske, a personnel manager in the Authority's human resources department, and asked for Haider-Rizvi's termination. (Docket Entry No. 42-32). Stewart reported that Haider-Rizvi had been hostile and abusive during the phone conversation about missing work, and that he had become irate when presented with the written reprimand stemming from that incident. (*Id.*).

Assistant director of human resources Clay Cossey wrote to Haider-Rizvi on May 12, 2015. The letter told Haider-Rizvi that he was terminated from his employment with the Toll Road Authority, effective immediately. (Docket Entry No. 42-33). In the letter, Cossey noted that

Haider-Rizvi had violated multiple Authority employment policies by becoming hostile and aggressive and using profanity during the April 27 meeting with Stewart. (*Id.*). This lawsuit followed.

## II.    The Applicable Legal Standards

### A.    Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*,783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the

outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## B. Employment Discrimination Under Title VII

Employment discrimination in violation of Title VII can be proven by either direct or circumstantial evidence.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Evidence is direct if it would prove the fact in question without inference or presumption.  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted).  If no direct evidence exists, the court uses the familiar burden-shifting framework in *McDonnell Douglas Corp.*

6

*v. Green*, 411 U.S. 792, 802 (1973), to determine whether summary judgment is appropriate.  *See*

*Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).  The legal standard is well

settled:

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination.  If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Davis*, 383 F.3d at 317 (citations omitted).

The elements of a *prima facie* showing of discrimination are that the plaintiff: (1) is a

member of a protected class; (2) was qualified for the position; (3) was subject to an adverse

employment action; and (4) was replaced by someone outside the protected class or, in the case of

disparate treatment, was treated more harshly than others who were similarly situated.  *Okoye v.*

*Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

The defendant's burden of articulating a legitimate, nondiscriminatory reason for its adverse

employment action is a burden of production, not persuasion.  *See St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 506–07 (5th Cir. 1993).  The "ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

*Id.* at 507 (internal citations and quotation marks omitted).  The defendant must produce "admissible

evidence, . . . which, *if believed by the trier of fact*, would support a finding that unlawful

discrimination was not the cause of the employment action."  *Id.* at 507.

If the employer meets its burden, the *prima facie* case dissolves, and the burden shifts back

to the plaintiff to raise a fact dispute material to determining either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.  *Vaughn*, 665 F.3d at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision.").  "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination."  *Shackelford*, 190 F.3d at 404.

When evaluating pretext, the focus is on the employer's motivation for the adverse employment action, not whether the employer acted wisely or based its decision on an accurate understanding of the facts.  Title VII does not require objectively fairminded or well-reasoned business decisions.  It does require that employers refrain from making business decisions on a prohibited basis like race discrimination or retaliation for protected conduct.  *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).  It is not enough for a plaintiff to show a material factual dispute as to whether the company's decision to take an adverse employment action against him or her was good business, or to show that the employer was wrong about the underlying facts.  The question is whether the employer had a good-faith subjective belief that the facts that motivated the adverse action were true and warranted the action.  *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

**C.**     **Retaliation Under Title VII**

When a plaintiff seeks to prove retaliation through circumstantial evidence, she has the initial burden to make a *prima facie* showing that: (1) she was engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff meets his burden to show a prima facie case of retaliation, the analysis proceeds under the modified *McDonnell-Douglas* framework discussed above. The burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for the employment action. *Id.* If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

### D.     A Hostile Work Environment Under Title VII

The elements of a hostile work environment claim are that: (1) the plaintiff belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action. *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002). The plaintiff has the burden to prove all five elements for each claim to make a *prima facie* showing. When a plaintiff alleges that she was harassed by supervisors with immediate or successively higher authority over her, she must satisfy only the first four elements. *See Celestine v. Petroleos de Venezuela SA*, 266

F.3d 343, 353–54 (5th Cir. 2001).

For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also Watkins v. Texas Dept. of Crim. Justice*, 269 F. App'x 457, 463–464 (5th Cir. 2008) (per curiam) (unpublished).  Courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at 23; *see also Baker v. FedEx Ground Package Sys., Inc.*, 278 Fed. App'x 322, 329 (5th Cir. 2008) (supervisor's comments to African-American employee that "she did not want to work with people like" the employee and that "whites rule" were not sufficiently severe to survive summary judgment on a race-based hostile work environment claim); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007) (a supervisor's infrequent and isolated comments to the plaintiff about "ghetto children" and other racially insensitive remarks did not create a fact issue as to whether there was severe or pervasive harassment); *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005) (a supervisor's one two-hour "harangue" and use of a mocking tone on one occasion, and another supervisor's comment comparing the plaintiff to a "needy old girlfriend," did not amount to a severe or pervasive working environment); *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003) (occasional racial comments were insufficient for a hostile work environment claim).

"To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the

victim perceived it to be so."  *Harvill v. Westward Comm. LLC*, 433 F.3d 428, 434 (5th Cir.2005) (quoting *Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999)) (quotation marks omitted).  The legal standard requires proof of severe or pervasive conduct that can be characterized as "extreme."  *Faragher*, 524 U.S. at 788 (1998).  The Supreme Court has repeatedly stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

**III.    Analysis**

**A.    Haider-Rizvi's Discrimination and Retaliation Claims**

For present purposes, the court assumes, without deciding, that Haider-Rizvi has made out a *prima facie* case of discrimination and retaliation.  His claim still fails, because Haider-Rizvi has not identified record evidence that creates a genuine factual dispute material to deciding whether the Authority's proffered reasons for demoting and firing him are pretextual.

The Authority says it fired Haider-Rizvi because it believed that he was frequently hostile and abusive to coworkers and subordinates in the workplace.  In support, the Authority presents more than ten written complaints about Haider-Rizvi's behavior that other employees filed from 2013 to early 2015; several internal memos from different sources, including Haider-Rizvi's supervisor, stating that he should be demoted, suspended, and finally fired for repeated inappropriate workplace behavior, including after a reprimand and warning, and copies of the letters given to Haider-Rizvi explaining each adverse action, all identifying his hostile abusive behavior as the basis. The Authority amply discharged its burden of production.  Haider-Rizvi had the burden to identify evidence showing that the Authority's identified reason for firing him was pretextual.

11

Haider-Rizvi's only arguments are to challenge the wisdom of the Authority's decision or to contest the underlying facts about his actions towards, and exchanges with, other Authority employees. Haider-Rizvi argues that he was really an excellent supervisor who was taken advantage of by shiftless employees angered by his efforts to make them perform their job duties efficiently and effectively. (Docket Entry No. 43 at 21-22). His evidence is his own contemporaneous complaints about other Authority employees. (Docket Entries No. 43-4; 43-5; 43-11; 43-12; 43-14). These arguments and authority are insufficient as a matter of law. It is undisputed that the people he supervised and worked with repeatedly complained in writing that Haider-Rizvi yelled at them, swore at them, and belittled them. His supervisor complained that Haider-Rizvi became angry and abusive when he was questioned or criticized about his own work. The record amply shows that the Authority had a good-faith belief that the complainants' concerns were well-founded and Haider-Rizvi's were not.

Haider-Rizvi neither presents nor identifies evidence suggesting that, given the voluminous and consistent record of complaints about his behavior and what his supervisor observed, the Authority fired him for any reason other than its belief that he was hostile and abusive in the workplace. He has failed to meet his summary-judgment burden. His discrimination and retaliation claims fail.

**B.     Haider-Rizvi's Hostile Work Environment Claims**

Haider-Rizvi does not submit or identify evidence sufficient to support his hostile work environment claim. His summary judgment briefing on the issue attempts to show that the toll plaza where he worked was a hostile environment due to employees' efforts to undermine Haider-Rizvi's authority as a supervisor and otherwise "take advantage of the system." (Docket Entry No. 43 at

22-23).  Haider-Rizvi says that this made the environment "hostile."  (*Id.*).  He may not have found the workplace congenial or up to his standards.  But what matters is whether it was hostile in the legal sense: suffused with racial harassment that is severe or pervasive. There is no mention of harassment of Haider-Rizvi on a protected basis in the relevant portion of the brief.  Indeed, Haider-Rizvi's hostile-environment briefing does not identify any evidence, arguments, or authority relevant to the issue.

Setting aside Haider-Rizvi's failure to present legally relevant argument on this issue, the record does not show a genuine factual dispute material to deciding whether he suffered a hostile environment because of racial harassment.  Haider-Rizvi does not present any affidavits or deposition testimony on the issue.  He relies solely on copies of his own written complaints to the Authority's human resources department.  These complaints are difficult to decipher.  It appears that he complained twice about racially biased remarks directed toward him.  In December 2013, Haider-Rizvi filed a complaint stating that an unidentified person called him "Taliban."  (Docket Entry No. 43-5).  In an undated complaint about events up to December 4, 2014, Haider-Rizvi referred to his earlier complaint and stated that his reprimand was unfair because the "Harris county constable from day one constantly calling me names, you terrorist, you Taliban . . . ."  (Docket Entry No. 43-11). Later in that same complaint, he states that the constable "call me again same thing Taliban and others [*sic*] names" on January 29, 2014 and February 1, 2014, and on May 25, 2014, repeated the Taliban comment and joked about Haider-Rizvi bringing a bomb to work.  (*Id.*).

Assuming that these comments were made as described, Haider-Rizvi's claim fails.  He has not put forward or identified evidence that the comments were sufficiently frequent, severe, or pervasive as to affect a term, condition, or privilege of his employment.  The uncontroverted

13

summary judgment evidence shows that Haider-Rizvi himself did not subjectively regard the comments as sufficiently severe to create an abusive work environment.  The record evidence suggests that Haider-Rizvi engaged in mutual racially themed but nonetheless good-natured banter with the African-American deputy constable about whom he later complained.  In his December 2013 complaint in which he first raised the issue of the "Taliban" comments, Haider-Rizvi stated that he loved his job and came in every day with a positive attitude.  (Docket Entry No. 43-5).

The Authority's uncontroverted evidence is also inconsistent with Haider-Rizvi's claim that he subjectively perceived the comments as creating an abusive work environment.  First, Deputy Michael Calvin's declaration states that he was the officer Haider-Rizvi complained about and that they had a good-natured, joking relationship.  Deputy Calvin's declaration also suggests that Haider-Rizvi gave as good as he got: "Mr. Haider-Rizvi joked with me also.  Sometimes he would make racial comments to me (I am African-American), but I always took his comments as jokes." (Docket Entry No. 42-18).  Second, personnel manager Donna Riske's affidavit states that, after Haider-Rizvi's December 2013 complaint, she interviewed him about the "Taliban" comments; Haider-Rizvi stated that he understood Deputy Calvin's comments to be good-natured joking.  (Docket Entry No. 16).  The record similarly shows that it would not have been objectively reasonable for Haider-Rizvi to view these exchanges—the only race-based comments directed to him—as harassment.

## IV.    Conclusion

For the reasons stated in this memorandum and opinion, Haider-Rizvi has not met his summary judgment burden on his employment discrimination, retaliation, or hostile work environment claims.  Haider-Rizvi's suit is dismissed with prejudice.  Final judgment in favor of

14

Harris County is entered by separate order.

        SIGNED on March 20, 2017, at Houston, Texas.

                                          Lee H. Rosenthal
                                Chief United States District Judge